IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF FLORIDA

OCALA DIVISION

FILED

2020 AUG 10 PM 1: 55

CLERK US DISTRICT COURT
MIDDLE DIST OF FL
OCALA FLORIDA

Reginald McClain                          )
                                          )
                                          )
v.                                        )     Case No. 1:09-CR-12-001 (WLS)
                                          )
United States of America,                 )     5:20 CV-367-OC-37PRL
                                          )
_____)

## MOTION FOR COMPASSIONATE RELEASE PURSUANT TO
## 28 U.S.C. §2241's FUTILITY EXCEPTION IN LIGHT OF
## COVID-19's RECENT SURGE IN CASES AT FCC COLEMAN RENDERING
## AN INABILITY TO EXHAUST ADMINISTRATIVE REMEDIES DUE TO AUGMENTATION

COMES NOW, the defendant Reginald McClain (hereinafter referred to as "McClain") moves this Court for Compassionate release/Reduction in sentence in accordance with the First Step of 2018 and 28 U.S.C. §2241.

### I. STATEMENT OF FACTS

On March 24, 2011 following a guilty plea to Conspiracy to possess with intent to distribute cocaine base, McClain was sentenced to 262 months imprisonment followed by 5 years supervised release, based in part on findings that he was a career offender.

On April 8, 2011 McClain filed a notice of appeal. Subsequently the Court of Appeals for the Eleventh Circuit granted the United States's motion to dismiss McClain's appeal based on the appeal waiver in his plea agreement.

On August 15, 2013 McClain filed a §2255 motion to vacate based upon the Fair Sentencing Act of 2010 which removed certain mandatory minimum sentencing requirements. The motion was granted, and McClain was resentenced as a career offender to 188 months and 5 years supervised release.

On January 17, 2018 McClain incorrectly filed a habeas motion pursuant to 28 U.S.C. §2241 arguing improper sentencing enhancement under the career offender provisions, seeking declaratory and/or injunctive relief. That motion was denied with prejudice.

On June 28, 2020 via Case Manager Agard of B-4 unit, McClain submitted his initial claim for compassionate release to Warden Lane of Coleman-Low using a standard §3582 form issued at the institutional level. On July 9, 2020 the Warden denied McClain's request for compassionate release.

-1-

## II. EXHAUSTION REQUIREMENT

Generally, a federal prisoner must exhaust his or her administrative remedies before seeking habeas relief in federal court under 28 U.S.C §2241. Santiago-Lugo v. Warden, 785 F.3d 467, 475 (11th Cir. 2015). A petitioner who fails to exhaust administrative remedies will find his petition dismissed on these grounds. See e.g., Wells v. Rathman, No.1:12-cv-2400-AKK-TMP, 2014 U.S. Dist. LEXIS 160189, 2014 WL 6455142, at *4 (N.D. Ala. Nov. 13, 2014). Exceptions to this exhaustion requirement apply only in "exceptional circumstances" and the petitioner bears the burden of demonstrating the futility of administrative review. Jaimes v. United States, 168 Fed. Appx. 356 (11th Cir. 2006)(per curiam); see also Fuller v. Rich, 11 F.3d 61, 62 (5th Cir. 1994) (per curiam).

On March 13, 2020, the President of the United States issued a proclamation declaring a National Emergency in response to the COVID-19 pandemic. Due to the growing surge of cases at FCC Coleman, the already understaffed facility is overwhelmed with a newly staff shortage. Under complete lockdown the administrative are either no longer operating in there official capacity due to augmentation to other areas such as food service or laundry, or they are no present at the facility to work. Only custody officers are present in the units. McClain avers that the only method at which to obtain and expedite the administrative process is to retrieve the forms from his counselor, who along with the case manager and unit manager have been absent. As of late, McClain has a pending medical procedure marked "URGENT" and has been recently told that due to the growing surge of COVID-19 cases, all outside hospital visits and surgeries are canceled until further notice. Due to the nature of McClain's medical issue, the §2241 is appropriate whereas in the Eleventh circuit, there is no futility exception to 18 U.S.C. §3582-(c)(1)(A). McClain's argument emphasizes his serious medical condition.

### III. LEGAL STANDARD

Exhaustion in the context of Section 2241 habeas petitions is a judge-made rule subject to judge-made exceptions. McClain points out that habeas exhaustion requirements are slightly different from PLRA exhaustion requirements because the former allow exceptions for futility and irreparable harm. (citing United States v. McGriff, 468 F. Supp. 2d 445, 447 (E.D.N.Y. 2007). As explained in McGriff, a court may "dispense with the exhaustion requirement 'if it appears that an administrative appeal would be futile or because the appeals process is shown to be inadequate to prevent irreparable harm to the defendant.

Federal Courts are forbidden, as a general matter, to 'modify a term or imprisonment once it has been imposed;' but the rule of finality is subject

to a few narrow exceptions. The compassionate release statute creates one
such exception: It allows a court to "reduce" a term of imprisonment, after
considering the factors set forth in 18 U.S.C. §3552(a), if "it finds that
. . . extraordinary and compelling reasons warrant such a reduction . . .
and that such a reduction is consistent with applicable policy statements
issued by the sentencing commission.

Under the First Step Act, defendants serving their sentence may move the
Court for Compassionate Release. The Attorney General issued new directives
to the BOP in light of the COVID-19 epidemic and the recently passed CARES-
ACT.

First, the Attorney Generally formally found that "emergency conditions are
materially affecting the functioning of the Bureau of Prisons" and that as
a result he was expanding the cohort of inmates who can be considered for
home release. The Attorney General was most concerned with inmates at those
institutions where "COVID-19 is materially affecting operations." At these
facilities, the Attorney General directed the BOP to "immediately review
all inmates who have COVID-19 risk factors," not just those who were pre-
viously eligible for transfer. The memo directs the BOP to immediately pro-
cess suitable candidates for home confinement, and notes that "time is of
the essence." McClain qualifies for them both but FCC fails to acknowledge
that.

#### IV. ARGUMENT

McClain has been incarcerated since June 22, 2009. He's served more
than 11 years of his sentence, nearly 75%. On June 4, 2020 he was diagnosed
with having an Esophageal Stricture, which is the medical term for the
narrowing of the esophagus (the tube from the mouth to the stomach). It causes
swallowing difficulties. Left untreated and monitored, his condition will
become serious, deteriorating, and unlikely to improve. What remains prev-
alent is the risk of choking whenever he eats due to chronic dysphagia. Since
being diagnosed, McClain received a prognosis that detailed him cutting his
food into small pieces to ease the dysphagia and he was recommended for a
procedure called "Esophageal Dilation" and it was marked "URGENT."
He's suffered multiple episodes to where he had to be taken to medical for
observation. Esophageal Stricture, is rare and only in one case has it been
the sole reason for compassionate release. See United States v. Dimasi, 220
F. Supp. 3d 173, 175 (D. Mass 2016)(discussing the progression from the OIG
report to new "enccuraging" guidelines). In doing so, the sentencing Comm-
ission identified several categories of qualifying "extraordinary and com-
pelling reasons," including medical condition, age, family circumstances
and "other reasons" for circumstances in which the Director of the BOP det-

ermines that there is an extraordinary and compelling reason other than, or in combination with," medical, age and family circumstances. U.S.S.G. §1B1.13, Application Note 1(A).

Nearly identical to Dimasi, although is not terminally ill, he suffers from chronic dysphagia.

On or around June 4, 2020 after a period of discomfort from eating and drinking, P.A. Baker at Coleman-Low examined McClain and determined that McClain has an Esophageal Stricture. His prognosis was to have an Esophageal Dilation. A dilation is a procedure using a ballon or a series of dilators (long tubes of varying increasing sizes) that are passed down the esophagus over the obstruction in order to stretch out a stricture that is causing the narrowing of the esophagus. Generally, a scope is passed through the narrowed area to assess it, and a guide wire is then left behind. The scope is taken out and then, using the guide wire, either a series of dilators that are tapered and rigid, or a baloon that will have a control channel that could be threaded over the wire, is inserted to stretch out the area. The guide wire helps insure that the dilators are placed down the esophagus and not diverted into the diverticulum, so it is not prudent to dilate a patient with a Zenker's diverticulum without some sort of guidance or tract.

A Zenker's diverticulum is an outpouching,m or defect, of the posterior wall of the esophagus. It forms posterior to and above the cricopharyngeus muscle (the "CP muscle") when a hypertonic, or tense, CP muscle partially obstructs the flow of food down the esophagus during swallowing. When the food hits the obstruction, it finds a point of weakness above that obstruction and creates a pouch, which is the Zenker's diverticulum. A Zenker's diverticulum in and of itself can be asymptomatic. It may become problematic, however, if it causes regurgitation or aspiration, or if it causes halitosis.

McClain avers that Health Services hasn't been efficient as to their standard of care. It is common and within the standard of care to use the Endoscopy (EGD) to assist in identifying the cause of dysphagia. The dilation is intended to provide temporary relief by stretching the non-relaxing CP muscle. At some point following the dilation, the muscle will re-contract back. There is a study, however, albeit involving only a limited number of patients, that shows "that endoscopic dilation can be an effective treatment for patients with oropharyngeal dysphagia because of a CP bar" and that the temporary relief provided can last as long as a period of years, even if the patient has a Zenker's diverticulum.

As mentioned above, it is unknown whether McClain has developed a Zenker's diverticulum because it can be asymptomatic. McClain should have been sent to surgery initiallly, with an endoscopy performed in connection with the surgery

-4-

in June 2020. The endoscopy is a much less invasive procedure, and does not require general anesthesia so it has less potential dangers for McClain. Due to the growing surge in COVID-19 cases at FCC Coleman-Low, all hospital visits and pending procedures are canceled, leaving McClain with minimal chances of receiving a much needed, serious operation.

## A. EFFECTS OF COVID-19

McClain seeks compassionate Release not only to lessen his chances of contracting the virus, which has serious and potentially lethal consequences, but also because with out surgery and proper care, his condition grows worser everyday going unattended.

The COVID-19 virus is highly infectious and can be transmitted easily from person to person. COVID-19 fatality rates increase with age and underlying health conditions such as cardiovascular disease, respiratory disease, and immune compromise. If contracted, COVID-19 can cause severe complications or death. Because there is no current vacdine, the CDC recommends preventative measures to decrease transmission such as physical distancing, mask wearing, and increasing focus on personal hygiene such as additional hand washing.

Coleman-Low, just like the other greatly effected institutions in the BOP, has only open-bay dormitories where social distancing is impossible. There can be little doubt that incarcerated individuals face an even greater risk of transmission, given the conditions frequently present in correctional and detention facilities. See **United States v. Kennedy**, No 18-20315, 2020 U.S. Dist. LEXIS 53359, at *4 (E.D. Mich. Mar. 27, 2020). These conditions include, among other things, the highly congregational environment, the limited ability of incarcerated persons to exercise effective disease prevention measures (e.g., social distancing and frequent handwashing), and potentially limited onsite healthcare services. Correctional and detention facilities "present unique challenges for control of COVID-19 transmission among incarcerated/detained person [and] staff." According to public health experts, incarcerated individuals "are at special risk of infection, given their living situations," and "may also be less able to participate in proactive measures to keep themselves safe." "Infection control is challenging in these settings," especially being in open-bay dorms like at Coleman-Low. Social cannot be achieved. See **Center for Disease and Prevention, Guidance for Correctional Detention**. See also **CDC Interim Guidance** at 2 (listing the "components" that present unique challenges for control of COVID-19 transmission among incarcerated/detained persons, staff, and visitors) seee also **Greifinger Decl.** ¶¶ 4, 13 (explaining that once it is introduced, COVID-19 "spreads like

wildfire" through detention facilities, and noting the "severe lack of testing
capacity nationwide.") Because persons with the virus may be asymptomatic,
"nearly everyone who is not practicing social distancing is in contact with
someone who has the virus. In the face of a deadly pandemic with no vaccine,
no cure, limited testing capacity, and the ability to spread quickly through
asymptomatic human vectors, a 'generalized risk' is a 'substantial risk' of
catching the COVID-19 virus for any group of human beings in highly confined
conditions, such as McClain within FCC Coleman-Low. The most recent surge
in record numbers in Florida further endangers.

## B. EXTRAORDINARY AND COMPELLING REASONS FOR RELEASE

McClain set to be release on January 4, 2023, was found to have developed
an Esophageal Stricture, a narrowing of his throat, causing chronic dysphagia.
McClain hasn't been properly treated for this condition due to the outbreak
of COVID-19 at FCC Coleman. He has been recommended for an "URGENT" procedure
called an Esophageal Dilaton and was only told since then to just cut his
food into small pieces. Nevertheless, he is at serious risk of choking when
he eats. He is also at risk of having food go into his lungs, which can cause
pneumonia and death. Due to his condition, his health is unstable in that
regard due to the requirement of clinical attention almost daily to monthly.
As time persists, left untreated, McClain's condition deteriorates and will
soon be unlikely to improve with treatment. His ability to function while
in custody in diminishing.

The BOP cannot limit the physical ailments presenting "extraordinary and com-
pelling reason" for release identified by the Sentencing Commission. The Sent-
encing Commission has been appointed by statute to identify the circumstances
giving rise to "extraordinary and compelling reasons" justifying sentence
reduction and has granted the Bureau of Prisons limited authority to identify
additional reasons for sentence reductions. To the extent that the Bureau
of Prisons has used its limited authority to narrow the class of individuals
entitled to release, it has exceeded that authority. The First Step Act em-
bodies Congress's intent to reduce the Bureau of Prison's authority over
compassionate release petitions and authorizes the district courts to excercise
their "independent discretion to determine whether there are 'extraordinary
and compelling reasons' to reduce a sentence.

In this case, the Court need not reach beyond the "extraordinary and comp-
elling reasons" identified by the Sentencing Commission because McClain has
shown that he is "suffering from a serious physical condition" and a "serious
functional or cognitive impairment . . . that substantially diminishes [his]
ability . . . to provide self-care withing the environment of a correctional

-6-

facility and from which he is not expected to recover." U.S.S.G. §IBI.I3 cmt. n. I(A). BOP medical records indicate that McClain suffers from an Esophageal Stricture which requires Dilation that cannot be performed due to the surge of COVID-I9 not only at the prison but the area surrounding the prison and lack of hospital space.

### C. EVIDENCE OF A QUALIFYING MEDICAL CONDITION

As outlined in ATTACHMENTS A, B & C, the initial request for McClain's medical records was made on June 20, 2020 (A) 'inmate to staff request' and again utilizing the same messaging system but addressed to the Warden while in his attempts to expedite the compassionate release process. Health Services at Coleman-Low are unstaffed and as mentioned in verbal requests "overwhelmed." Bureau of Prison Officer Post-Logs will reveal that on numerous dates, McClain had to be taken to health services for complications in relation to his condition. Medical records are still unavailable to this day.

### D. MCCLAIN IS NOT A DANGER TO THE SAFETY OF ANY OTHER PERSON OR THE COMMUNITY

There is no evidence that McClain used or encouraged violence in this case, or that he possessed a weapon. The crime that McClain was sentenced for was doubtedly serious, but non-violent. However, McClain pled guilty and has adepted responsibility for his conduct, in person before the court. McClain has a non-violent background that consists of minor offenses. His criminal history doesn't reflect the man that he is today. In addition, §3553(a) analysis, McClain poses no threat to the community or others.

For the past II years he has been incarcerated. During that time he has completed over 40 programs including earing his GED, Culinary Arts Training and NRDAP and drug education and multiple RPP course, totaling over II00 hours of programing applying himself to learn different things as part of his rehabilitation. While the Court's I88 month sentence reflected the seriousness of McClain's offense and was at the time sufficient but not greater than necessary to achieve the purposes of sentencing, the Court's analysis should be different in present circumstances. Specifically, due to the COVID-I9 pandemic, the "history and characteristics of the defendant" and the need . . . to provide the defendant with needed . . . medical care," §3553(a), now weigh heavily in favor of McClain's release, given the health risk that continued incarceration poses to him.

McClain contends that, under §3553(a) factors, his time served constitutes a sentence sufficient, to accomplish the goal of sentencing.

## V. PROPOSED RELEASE PLAN

When released McClain proposes to live with his brother and his wife, who
are will'ing to care for him until he achieves gainful employment. They also
have a rocm set aside for McClain to be able to quarantine for as long as
needed.

Michael and Earnette McClain - Brother & Sister-in-Law
904 Stormy LN
Jonesboro, Ga 30238
404-387-4028

### a. HEALTH CARE

McClain's father, Willie McClain intends to add McClain to his already existing
Health Care Plan through Blue Cross Blue Shield until McClain is able to obtain
his own Health Care. Following his release, McClain also intends to initially
apply for medicare/medicaid  or both, he doesn't know at this time whether
he qualifies or not.

### b. EMPLOYMENT

McClain's employment in insure by the recommendation from his brother whom
he will be living with who's built a career working for DHL for the past
decade or so. He will secure McClain's employment once he is released.

### CONCLUSION

McClain is well aware of all conditions regarding home confinement
associated with supervised release or whatever the courts deem to be necessary
including the limitations on employment hours and travel. These should provide
no obstacles for McClain to fulfill his commitment as he transistions back
into society. He understands the difference between the compassionate that
he's requested and the special conditions if any that may include home con-
finement. Wherefore, McClain prays that this court recognizes and grants this
motion.

Respectfully Submitted

*Reginald McClain*

Reginald McClain, Pro Se
Reg. No. 87746-020
FCC Coleman-Low
P.O. Box 1031
Coleman, Florida 33521

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing 28 U.S.C. §2241 motion was placed in the prison legal mailbox and addressed to:

United States District Court
for the Middle District of Florida
Office of the Clerk
207 Northwest Second Street, Suite 337
Ocala, Florida
34475-6603

on this $\underline{27}$ day of $\underline{July}$ 2020.

Respectfullly Submitted
*Reginald McClain*
Reginald McClain, Pro Se
Reg. No. 87746-020
FCC Coleman-Low
P.O. Box 1031
Coleman, Florida
33521

-9-

TRULINCS  87746020 - MCCLAIN, REGINALD - Unit: COL-B-D

--------------------------------------------------------------------------------

FROM: 87746020
TO: Health Services LOW
SUBJECT: ***Request to Staff*** MCCLAIN, REGINALD, Reg# 87746020, COL-B-D
DATE: 06/20/2020 08:55:44 AM

To: medical
Inmate Work Assignment: orderly

may i have the medical record of the surgery i pose to have soon that the doctor request that i have on my throat .
thank you for your time

Attacment
A

TRULINCS  87746020 - MCCLAIN, REGINALD - Unit: COL-B-D

---------------------------------------------------------------------------------------

FROM: Associate Warden LOW
TO: 87746020
SUBJECT: RE:***Inmate to Staff Message***
DATE: 06/29/2020 08:07:02 AM

Forwarded to the medical records dept.

>>> ~^!"MCCLAIN, ~^!REGINALD" <87746020@inmatemessage.com> 6/28/2020 1:18 PM >>>
To: AW
Inmate Work Assignment: dorm orderly b-4

I have put in a request for my medical records. i have developed a condition since coming and medical seems to be of no assistance so i am writing you to maybe expadite the request or to allow me to sign them off to someone on the outside. thank you for your time.
-----MCCLAIN, REGINALD on 6/20/2020 8:55 AM wrote:

>

may i have the medical record of the surgery i pose to have soon that the doctor request that i have on my throat .
thank you for your time

A Htacment
B

TRULINCS 87746020 - MCCLAIN, REGINALD - Unit: COL-B-D

-------------------------------------------------------------------------------------------------------

FROM: 87746020
TO: Warden LOW
SUBJECT: ***Request to Staff*** MCCLAIN, REGINALD, Reg# 87746020, COL-B-D
DATE: 07/28/2020 03:10:54 PM

To: Ms. Lane
Inmate Work Assignment: dorm orderly

Ms. Lane I've already had 3 episodes where I literally choked and the discomfort is amplifying.. i was taken to medical 3 times
and i was only told my prognosis and that i should wait.. i received no medication and nothing for the discomfort.. on your desk
as of july 22, you have a bp9 that i used to appeal your decision... at your discretion I'm only asking to return me to my family
and society where i can properly care for myself and be with my family in this crisis...
-----Warden LOW on 7/28/2020 2:07 PM wrote:

>
Your email was forwarded to the medical department.  You have a procedure ordered by the doctor. If you feel you need
immediate medical attention, see the medical staff that comes to your unit or have your officer/unit team call the medical
department.

>>> ~^!"MCCLAIN, ~^!REGINALD" <87746020@inmatemessage.com> 7/28/2020 9:51 AM >>>
To: Ms. Lane
Inmate Work Assignment: dorm orderly

Ms. Lane, my compassionate release was denied on July 9, 2020. I have an esophageal stricture that was diagnosed by your
medical staff. It puts me at risk of choking because of the narrowing of my esophagus. I was put in for a procedure called
esophageal dilation, and the order placed was marked "URGENT"..... Ms. Lane all hospital visits and procedures are now
canceled due to the outbreak which means I could die under your watch. I only have 28 months left to go home and with the
cancelation of everything.. what is there left for me to do besides appeal to you. With medical being tied up with the COVID-19
cases, no room in outside hospitals, no procedures and this condition is getting worse, I am really at risk. I complain to the
medical staff now and all i'm told is that, "we're only doing temperature checks" and there is no sick call. At nights when I'm not
sleeping, i try to eat, it's painful and stressful.. I need you,  WARDEN, to please look into this.

Attacment
C

Reginald McClain 87746-020
Federal correctional Institution (LOW)
P.O. Box 1031
coleman Florida
    35521

SCREENED
By USMS

United States District Court
for the middle District of Florida
office of the Clerk
207 Northwest Second Street, Suite 337
    34475-6603

TAMPA
SAINT PETERS
04 AUG 2020 PM 5 L
USA